Case 1:24-cv-24690-KMM   Document 1-1   Entered on FLSD Docket 12/01/2024   Page 1 of 15

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE: _____

LEONARD HOCHSTEIN,
DANIEL VINCENT LIBURDI and
SINAN TUNA,

        Plaintiffs,

v.

CITY OF MIAMI BEACH,
a municipal corporation,

        Defendant.

_____/

## COMPLAINT

Plaintiffs, LEONARD HOCHSTEIN ("Hochstein"), DANIEL VINCENT LIBURDI ("Vincent"), and SINAN TUNA ("Sinan") (collectively referred to as "Plaintiffs"), by and through undersigned counsel, hereby sue Defendant, CITY OF MIAMI BEACH ("Defendant"), and in support thereof states as follows:

## OVERVIEW

1.    This is an action for declaratory and injunctive relief related to Defendant's illegal passing of a city resolution that violates Plaintiff's due process and property rights.[1]

## PARTIES

2.    Plaintiff, Leonard Hochstein is an individual owning and residing on Star or Hibiscus Island in Miami Beach, Florida.

---

[1] Plaintiffs have attempted to obtain the special use permit discussed herein, even though time does not allow same. If the permit is not obtained and if the emergency injunction is not granted, they will amend to seek damages.

3.     Plaintiff, Daniel Vincent Liburdi, is an individual owning and residing on Star or Hibiscus Island in Miami Beach, Florida.

4.     Plaintiff, Sinan Tuna, is an individual owning and residing on Star or Hibiscus Island in Miami Beach, Florida.

5.     Defendant, City of Miami Beach (the "City"), is a municipal corporation located in Miami-Dade County, Florida.

**JURISDICTION**

6.     This Court has personal jurisdiction over the Defendant because it is based and conducts business in Miami-Dade County, Florida.

7.     This is an action for damages over $50,000.00, and subject matter jurisdiction properly rests with this Court.

**COMMON ALLEGATIONS**

8.     The week of December 2-8, 2024, is "Miami Art Basel Week." As has been done in the past few years, Plaintiffs intend to stage a private party at each of their respective homes for their invited guests, in compliance with all existing ordinances.

9.     While displaying a lack of compliance with the City Code, at Sections 2-1, 2-14, and 2-17, the City passed a resolution (not an ordinance), making it impossible to stage these parties, causing Plaintiffs to lose substantial property and rights without due process.

10.     On November 20, 2024, the City of Miami Beach issued a Resolution 2024-3307, a copy of which is attached hereto as **Exhibit "A"** (the "Resolution"). The Resolution was passed without notice to the public as is required by Code Section 2-1 and 2-17. It was passed without compliance with Section 2-14, as same was not on the Commission Agenda on such date, and upon information and belief, the Resolution was not voted upon.

2

11.     The Resolution purports to stop the Plaintiffs from putting on their intended private parties.

12.     Pursuant to Florida Statute § 252.38, a city's use of emergency powers "must be narrowly tailored to serve a compelling public health or safety purpose and must be limited …in scope in order to reduce any infringement on individual rights or liberties to the greatest extent possible."

13.     Consequently, the Resolution is not "narrowly tailored to serve a compelling public health or safety purpose and must be limited …in scope in order to reduce any infringement on individual rights or liberties to the greatest extent possible."

14.     The passage of the Resolution adversely affects the Plaintiffs' rights, the deprivation of which without notice and an opportunity to be heard, violates their fundamental rights to privacy and due process under the First Amendment, is a violation of Sections 2-1, 2-14 and 2-17 of the City Code and a violation of the City of Miami Beach's "Citizen's Bill of Rights," Section A -5, A-6 and A-8.

15.     Plaintiffs have exhausted all administrative remedies to no avail[2] and all other conditions precedent to this action have been performed, waived, or have occurred.

## COUNT I – DECLARATORY RELIEF

Plaintiff repeats and hereby reincorporates by reference into this count the allegations above in paragraphs 1-15 as if fully set forth herein, and further alleges:

16.     This is a count for declaratory relief pursuant to Florida Statute Chapter 86 et seq.

17.     The antagonistic and adverse interests are all before the Court by proper process and the relief sought is not for legal advice by the Court, nor to answer questions propounded from

---

[2] Plaintiffs' effort to obtain a special use permit is proceeding; however, the City has made it clear in the Commission Meeting when the Resolution passed, that they intend to shut down Plaintiffs' private parties.

curiosity.

18.     Defendant believes that the Resolution is valid and enforceable.

19.     Plaintiffs believe that the Resolution is void and unenforceable for the reasons stated herein and in the Emergency Motion for Injunctive Relief.

20.     A bona fide dispute exists between the parties as to whether or not the Resolution is enforceable as an ordinance.

21.     Plaintiffs have a justiciable question as to the propriety and enforceability of the Resolution for the reason set forth in the Emergency Motion for Injunctive Relief filed concurrently herewith.

22.     A bona fide, actual, present need to determine the propriety and enforceability of the Resolution exist.

23.     Plaintiffs request this Court to declare that (1) the Resolution is void as a matter of law and (2) unenforceable against Plaintiffs.

WHEREFORE, for the reasons set forth herein, Plaintiffs, Leonard Hochstein, Daniel Vincent, and Sinan Tuna, request this Court to enter an Order that (1) the Resolution is void as a matter of law and (2) unenforceable against Plaintiffs, enjoin the City of Miami Beach from enforcing the Resolution against Plaintiffs, and for such further relief as this Court may deem just and proper.

Respectfully submitted,
**WOLFE LAW MIAMI, P.A.**
**COUNSEL FOR PLAINTIFFS**
175 SW 7th Street, Suite 2410
Miami, FL 33130
Phone: 305.384.7370
Fax:     305.384.7371

By:

RICHARD C. WOLFE
Florida Bar No.: 355607
rwolfe@wolfelawmiami.com

# EXHIBIT A



Discussion Item - R9 AH

# MIAMIBEACH

COMMISSION MEMORANDUM

TO:       Honorable Mayor and Members of the City Commission

FROM:     Commissioner Joe Magazine

DATE:     November 20, 2024

TITLE:    DISCUSS/TAKE ACTION – TIME SENSITIVE DISCUSSION RE PARTY HOUSE(S)
          ON HIBISCUS ISLAND DURING ART BASEL WEEKEND

**RECOMMENDATION**

**BACKGROUND/HISTORY**

There have become multiple short-term rental homes on Hibiscus Island that have been purchased by corrupt owner(s) and transformed into large-scale "party houses." Neighbors have been subjected to all hours of the night by commercial-grade speakers blaring music and booming bass, and as commercial-grade blaring music has disturbed the peace and tranquility of the entire neighborhood. We have had legal complaints, commercial-grade loud music display from a barge that had been reported that during December 5, 2024, during Art Basel week.

Together, my administration and the City Attorney's Office are proactively working with the PD to immediately combat and ultimately ameliorate the negative impacts to the community of these abhorrent and harmful parties during Art Basel. I would like to discuss any potential new tools that the City may employ to help protect our City Administration and City Attorney's Office as we endeavor to preserve the quality of life...



Section the AMM

Is this a Residents Right to Know? item,
as defined by City Code Section 2-172?

Is this item in reference to G.O. Bond
Project?

No

Is this the Agenda Item initially requested by a lobbyist which, as defined in Code Sec. 2-481,
as does a principal engaged in lobbying? 2. No

Specify the name of lobbyist(s) and principal(s)

Commissioner Alex Fernandez

Title: Having Sensitive Discussion Re Party House(S) On Hibiscus Island During
hurricane?

**RESOLUTION NO.**  **2024-33407**

A RESOLUTION OF THE MAYOR AND CITY COMMISSION OF THE CITY OF MIAMI BEACH, FLORIDA, AUTHORIZING AND DIRECTING THE CITY ADMINISTRATION TO AMEND THE CITY'S SPECIAL EVENT GUIDELINES TO REQUIRE A "PHS ISLANDS SPECIAL EVENT PERMIT" FOR PARTIES AND GATHERINGS IN SINGLE FAMILY HOMES ON PALM, HIBISCUS AND STAR ISLANDS DURING MIAMI ART WEEK WHENEVER THE PARTY OR GATHERING IS SO LARGE IN SCALE AND/OR INVOLVES SEVERAL INSTITUTIONAL OR COMMERCIAL GRADE VENDORS, SERVICES, OR EQUIPMENT SUCH THAT THE PRODUCTION OF THE EVENT IMPACTS PUBLIC SAFETY, NEIGHBORHOOD TRAFFIC, OTHER RESIDENTS' RIGHT TO A DECENT QUALITY OF LIFE, AND/OR THE RESIDENTIAL CHARACTER OF SINGLE-FAMILY NEIGHBORHOODS ON THESE ISLANDS AND THE SURROUNDING NEIGHBORHOODS.

WHEREAS, the City's special events guidelines define a special event as a non-recurring special occasion or activity which is temporary in nature, and has extraordinary or excessive impacts on public health, safety and welfare. See Special Event Guidelines, p.3, attached as Exhibit A; and

WHEREAS, in recent years, large-scale house parties and other special events have occurred in the City's residential neighborhoods, including on Palm, Hibiscus, and Star Islands ("PHS Islands"), during Miami Art Week with so many attendees and the use of institutional grade event equipment, to include large and powerful commercial grade speakers, large commercial grade party and dance floor lighting, large and commercial grade generators, and/or commercial grade firework displays such that the party or gathering cannot reasonably proceed without various violations of City Code and other laws, impact public safety by clogging the narrow roadways on these islands and the roads approaching them such that emergency vehicles cannot respond to emergences in a timely fashion and by concentrating such a large number of people in an area that, by its residential nature, does not allow for adequate and effective public safety management of the crowds and the overflow from these crowds in the residential neighborhoods on or around these residential islands; and

WHEREAS, these large and institutional parties and gatherings during Miami Art Week on PHS Islands are so negatively impactful to public safety, neighborhood traffic, other residents' right to a decent quality of life, and/or the residential character of single-family neighborhoods that ... harm or excessive impacts on public health, safety and welfare, are produced such that the Mayor and City Commission determine that they should not be allowed to proceed without the proper ... such party or, for and obtaining a special event permit that may include limitations and ... remove (if it is granted at all) that would protect the City and residents' interest in ... public safety, neighborhood traffic, other residents' right to a decent quality of life, ... residential character of single-family neighborhoods on these islands and the surrounding neighborhoods; and

WHEREAS, ... the Mayor and City Commission direct the City Administration to amend the ... to require a "PHS Islands Special Event Permit" ("PHS ... and ... that any ... issued pursuant to City Code Section 46-... involving institutional or commercial-grade vendors, services, ... neighborhoods during Miami Art Week, which shall be ... neighborhood traffic, residents' quality of life, and the

1

*Clivia*

residential character of single-family neighborhoods can be adequately ensured in advance of the event; and

WHEREAS, the amendments to the special event guidelines mandated by this Resolution shall include the requirement for a PHS SEP for parties and gatherings on PHS Islands, during Miami Art Week, where fireworks will be involved, more than 100 attendees may reasonably be expected to attend, where more than 50 vehicles are expected to pick up/drop off passengers (or park) on PHS, where institutional/commercial grade speakers, lighting, and/or generators are to be utilized, or where institutional/commercial grade bars that are large enough to allow more than one bartender to work behind each bar or the use of more than three (3) single-bartender bars are to be utilized; and

WHEREAS, whenever a PHS SEP is required for a party or gathering on PHS Islands during Art Basel Week, the application for PHS SEP shall incorporate a requirement for provision of any information necessary to analyze and address any impacts to public safety, neighborhood traffic, and/or other residents' right to a decent quality of life sufficient to allow the City Administration to impose limitations or additional requirements sufficient to address these impacts to the health, safety and welfare of PHS Islands residents and residents in surrounding neighborhoods, or to allow the City Administration to deny the application altogether if these enumerated interests cannot be adequately addressed; and

WHEREAS, a non-exhaustive list of requirements to obtain a PHS SEP shall be (1) agreement by the property owner to the ability of City personnel to enter the private property for compliance inspections prior to (accompanied by the owner or agent with mutually agreeable scheduling) and during the party (at any time); (2) property owner must obtain all relevant permits from all relevant City departments, such as, for example, obtain any required building permits where required; (3) property owner shall be required to comply with the special event guidelines and provide required documents, which include Certificate of Insurance and indemnification; and (4) any requirement that is imposed to protect the health, safety and welfare of the PHS Islands and surrounding neighborhoods residents and visitors; and

WHEREAS, applications for a PHS SEP required by this Resolution shall be submitted within the timeframe set forth in the guide lines for similar special events and shall be subjected to review by all relevant City departments, review committees, and to advisory review and comment by the PHS Islands Association; and

WHEREAS, any parties and/or gatherings on PHS Islands currently scheduled for Art Basel Week 2024, which is December 2-8, 2024, that are required to obtain a special event permit pursuant to this Resolution shall be allowed an expedited review and approval/denial process from the applicable agencies once all supporting documents have been submitted; and

WHEREAS, any party or gathering on PHS Islands during Miami Art Week requiring a special event permit pursuant to this Resolution that proceeds without the homeowner first obtaining a special event permit, or complying with all of its terms, conditions, limitations, and requirements, the applicable authority shall shut the party or gathering upon demand by the City and take other appropriate action under all applicable provisions of the City Code. If the owner, manager, director of the party or gathering does not comply with the cease and desist order, the City may fine each owner, manager, director or applicable charge. Additionally, no

[illegible text] imposed on the next thirteen (13) months if [illegible] complying with a special event permit where

2



required, alla ry property.

NOW, THEREFORE, BE IT DULY RESOLVED BY THE MAYOR AND CITY COMMISSION OF THE CITY OF MIAMI BEACH, FLORIDA, that the Mayor and City Commission authorize and direct the City Administration to amend the City's special event guidelines to require a PHS is not Special Event Permit, as set forth in the recitals above, for parties and gatherings in single family homes on Palm, Hibiscus and Star Islands during Miami Art Week whenever the party or gathering is so large in scale and/or involves several institutional- or commercial-grade vendors, services, or equipment such that the production of the event imperils public safety, neighborhood traffic, other residents right to a decent quality of life, and/or the residents' right to quiet and enjoyment in their neighborhoods on these islands and the surrounding neighborhoods.

PASSED AND ADOPTED this __ day of ____, 2024.

ATTEST:

NOV 2 1 2024    Mayor Steven Meiner

APPROVED AS TO
FORM & LANGUAGE
& FOR EXECUTION

 **eLaws.us**   Search Code        Sign In   Sign Up

🔲 Miami Beach
   🔲 Code of Ordinances
     🔲 SubPart A. CHARTER

## CITIZENS' BILL OF RIGHTS

*Latest version.*

(A)  This government has been created to protect the governed, not the governing. In order to provide the public with full and accurate information, to promote efficient administrative management, to make government more accountable, and to insure to all persons fair and equitable treatment, the following rights are guaranteed:

   1.  Convenient access. Every person has the right to transact business with the City with a minimum of personal inconvenience. It shall be the duty of the City Manager and the City Commission to provide, within the City's budget limitations, reasonably convenient times and places for required inspections, and for transacting business with the City.

   2.  Truth in government. No municipal official or employee shall knowingly furnish false information on any public matter, nor knowingly omit significant facts when giving requested information to members of the public.

   3.  Public records. All audits, reports, minutes, documents and other public records of the City and its boards, agencies, departments and authorities shall be open for inspection at reasonable time and places convenient to the public.

   4.  Minutes and ordinance register. The City Clerk shall maintain and make available for public inspection an ordinance register separate from the minutes showing the votes of each member on all ordinances and resolutions listed by descriptive title. Written minutes of all meetings and the ordinance register shall be available for public inspection not later than thirty (30) days after the conclusion of the meeting.

   5.  Right to be heard. So far as the orderly conduct of public business permits, any interested person has the right to appear before the City Commission or any City agency, board or department for the presentation, adjustment or determination of an issue, request or controversy within the jurisdiction of the City. Matters shall be scheduled for the convenience of the public, and the agenda shall be divided into approximate time periods so that the public may know approximately when a matter will be heard. Nothing herein shall prohibit the City or any agency thereof from imposing reasonable time limits for the presentation of a matter.

6. Right to notice. Persons entitled to notice of a City hearing shall be timely informed as to the time, place and nature of the hearing and the legal authority pursuant to which the hearing is to be held. Failure by an individual to receive such notice shall not constitute mandatory grounds for canceling the hearing or rendering invalid any determination made at such hearing. Copies of proposed ordinances or resolutions shall be made available at a reasonable time prior to the hearing, unless the matter involves an emergency ordinance or resolution.

7. No unreasonable postponements. No matter once having been placed on a formal agenda by the City shall be postponed to another day except for good cause shown in the opinion of the City Commission, or agency conducting such meeting, and then only on condition that any person so requesting is mailed adequate notice of the new date of any postponed meeting. Failure by an individual to receive such notice shall not constitute mandatory grounds for canceling the hearing or rendering invalid any determination made at such hearing.

8. Right to public hearing. Upon a timely request of any interested party a public hearing shall be held by any City agency, board, department or authority upon any significant policy decision to be issued by it which is not subject to subsequent administrative or legislative review and hearing. This provision shall not apply to the law department of the City nor to any body whose duties and responsibilities are solely advisory.

At any zoning or other hearing in which review is exclusively by certiorari, a party or his counsel shall be entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts. The decision of any such agency, board, department or authority must be based upon the facts in the record. Procedural rules establishing reasonable time and other limitations may be promulgated and amended from time to time.

9. Notice of action and reasons. Prompt notice shall be given of the denial in whole or in part of a request of an interested person made in connection with any municipal administrative decision or proceeding when the decision is reserved at the conclusion of the hearing. The notice shall be accompanied by a statement of the grounds for denial.

10. Managers' and attorneys' reports. The City Manager and City Attorney shall periodically make a public status report on all major matters pending or concluded within their respective jurisdictions.

11. Budgeting. In addition to any budget required by state statute, the City Manager shall prepare a budget showing the cost of each department for each budget year. Prior to the City Commission's first public hearing on the proposed budget required by state law, the City Manager shall make public a budget summary setting forth the proposed cost of each individual department and reflecting the personnel for



each department, the purposes therefor, the estimated millage cost of each department and the amount of any contingency and carryover funds for each department.

12.   Quarterly budget comparisons. The City Manager shall make public a quarterly report showing the actual expenditures during the quarter just ended against one quarter of the proposed annual expenditures set forth in the budget. Such report shall also reflect the same cumulative information for whatever portion of the fiscal year that has elapsed.

13.   Adequate audits. An annual audit of the City shall be made by an independent certified public accounting firm in accordance with generally accepted auditing standards. The independent City Auditor shall be appointed by the City Commission; both appointment and removal of the independent City Auditor shall be made by the City Commission. A summary of the results of the independent City Auditor's annual audit, including any deficiencies found, shall be made public. In making such audit, proprietary functions shall be audited separately and adequate depreciation on proprietary facilities shall be accrued so the public may determine the amount of any direct or indirect subsidy. Duties, method of selection, and method of compensation of the independent City Auditor shall be established by ordinance.

14.   Representation of public. The City Commission shall endeavor to provide representation at all proceedings significantly affecting the City and its residents before state and federal regulatory bodies.

15.   Natural resources and scenic beauty. It shall be the policy of the City of Miami Beach to conserve and protect its natural resources and scenic beauty, which policy shall include the abatement of air and water pollution and of excessive and unnecessary noise.

16.   Nondiscrimination. No person shall be deprived of any rights and privileges conferred by law because of race, color, national origin, religion, gender, sexual orientation, disability, marital status, familial status, or age.

17.   Nondiscrimination in City Employment and Benefits. The City of Miami Beach shall not discriminate in employment practices and benefits offered based upon an employee or applicant's race, color, national origin, religion, gender, sexual orientation, gender identity, disability, marital status, familial status, or age.

18.   Ethics in Government. The public's confidence and trust in City of Miami Beach operations and government must meet the most demanding ethical standards and demonstrate the highest level of achievement in its adherence to ethics laws. City of Miami Beach officials and employees are agents of the people and hold their positions for the benefit of the public—as public servants, they are to observe in their official acts a high standard of conduct and to discharge faithfully the duties of their office regardless of personal considerations and interests, recognizing that



promoting the public interest and maintaining the respect of the people in their government must be of foremost concern. In upholding the values of accountability and responsibility, all city officials and employees shall abide by applicable codes of ethical conduct, and be subject to all penalties provided for in such regulations.

19.   Improvement of Public Educational Facilities available to Miami Beach Citizenry. It shall be the policy of the City of Miami Beach to cooperate with the Miami-Dade County public schools, and with other appropriate governmental agencies, which will strive to improve the quality and quantity of public educational facilities available to the citizenry of the City of Miami Beach, Florida.

20.   City Assistance to Condominium and Co-op Owners. The City of Miami Beach hereby acknowledges the purpose and duties of the City's Administration as assisting condominium and co-op owners to navigate through the City's permitting process; to facilitate the resolution of other condominium-related issues with other outside agencies; and to act as a liaison between condominium or co-op owners, management firms and the City.

(B)   The foregoing enumeration of citizens' rights vests large and pervasive powers in the citizenry of the City of Miami Beach. Such power necessarily carries with it responsibility of equal magnitude for the successful operation of government in the City. The orderly, efficient and fair operation of government requires the intelligent participation of individual citizens exercising their rights with dignity and restraint so as to avoid any sweeping acceleration in the cost of government because of the exercise of individual prerogatives, and for individual citizens to grant respect for the dignity of public office.

(C)   Remedies for violations. In any suit by a citizen alleging a violation of this Bill of Rights filed in the Dade County circuit Court pursuant to its general equity jurisdiction, the plaintiff, if successful, shall be entitled to recover costs as fixed by the court. Any public official or employee who is found by the court to have willfully violated this article shall forthwith forfeit his office or employment.

(D)   Construction. All provisions of this article shall be construed to be supplementary to and not in conflict with the general laws of Florida. If any part of this article shall be declared invalid, it shall not affect the validity of the remaining provisions.

(Res. No. 2003-25288, 7-30-03; Res. No. 2003-25391, 7-30-03; Res. No. 2003-25443, 12-10-03; Res. No. 2009-27152, 7-22-09; Res. No. 2013-28299, 7-19-13; Res. No. 2013-28302, 7-19-13; Res. No. 2013-28303, 7-19-13)

Copyright © 2024 by eLaws. All rights reserved.