UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-24690-KMM

LEONARD HOCHSTEIN,
DANIEL VINCENT LIBURDI, and
SINAN TUNA

      Plaintiffs,

v.

City of Miami Beach, *a Florida municipal corporation*

      Defendant.

_____/

## ORDER

THIS CAUSE came before the Court upon Plaintiffs Leonard Hochstein, Daniel Vincent Liburdi, and Sinan Tuna[1] ("Plaintiffs") Verified Emergency Motion for Temporary Injunction. ("Mot.") (ECF No. 3). Defendant City of Miami Beach ("Defendant" or the "City") filed a Response in Opposition to the Emergency Motion for Temporary Injunction. ("Resp.") (ECF No. 4). Plaintiffs filed a Reply. ("Reply") (ECF No. 12). The Motion is now ripe for review. For the reasons set forth below, the Court DENIES Plaintiffs' Motion.

**I.  FACTUAL BACKGROUND**

This action concerns certain wealthy residents of the City of Miami Beach and their purported rights to host parties in their homes. An art fair, specifically known as "Art Basel Miami Beach" (hereinafter "Art Basel") is considered one of the City's busiest times of the year. Resp. at 4. Art Basel's festivities in the City are scheduled to take place this year from Friday, December

---

[1] On December 3, 2024, Plaintiff Sinan Tuna's claims were dismissed without prejudice. *See* (ECF No. 17).

6th through Sunday, December 8th, 2024. Resp. at 4. Over the past few years, several residents have hosted large parties during Art Basel at their homes on Star Island and Hibiscus Island, small islands in Biscayne Bay located off the west coast of the "main island" of Miami Beach. *Id.* at 1. Both islands are under the City's zoning code as "single-family residential districts" and are only accessible through a single-lane main road. *Id.*

Plaintiff Leonard Hochstein lives at 42 Star Island, Miami Beach and has hosted parties during Art Basel for the last two years. Mot. ¶ 1. He plans to host a party this year on December 6, 2024.[2] Plaintiff Hochstein's original permit application to host the party provides that he anticipates 1,500 people in attendance, with live performances from performers such as Hugel and Ludacris. Resp. at 8. The party is intended to be a "benefit celebration" hosted by NYLON magazine in support of the Institute for Contemporary Art. *Id.* Plaintiff Hochstein states that he has committed $300,000 to stage the event. Mot. ¶ 1.

Plaintiff Daniel Vincent Librudi lives at 101 N. Hibiscus Drive, Miami Beach and has planned three parties for Art Basel, one of which is to benefit a charity. Mot. ¶ 3. Plaintiff Liburdi is also planning to have live performances from DJ Axel Beca and guitarist Dorian Avila. Resp. at 10.

Independent of Art Basel, the City has several pre-existing regulations to address possible disturbances in residential neighborhoods. These include the City noise ordinance (City Code § 46-152), the Miami-Dade County noise ordinance (County Code § 21-28), and the Florida Building Code. *Id.* at 6. The City also prohibits the commercial use of single-family houses on Star and Hibiscus Islands. *Id.* at 14. The City has also had in place its Special Events Ordinance

---

[2] The Motion provides that Plaintiff Hochstein's party is set to take place on December 7, 2024, but Plaintiff Hochstein's original permit application sets the party's date for December 6, 2024. *See* (ECF No. 4-7).

(City Code § 12-5) since 2001, which authorizes the City Manager or his designee to issue, modify or revoke permits for special events. *Id.* at 6.

On November 20, 2024, the City issued the "Art Week PHS House Party Resolution" (hereinafter the "Resolution"), which amended the City's special event guidelines to require a special events permit for parties and gatherings in single-family homes on Palm, Hibiscus and Star Islands, during the week of Art Basel "whenever the party or gathering is so large in scale and/or involves several institutional-or-commercial-grade vendors, services, or equipment such that the production of the event impacts public safety, neighborhood traffic, other residents' right to a decent quality of life, and/or the residential character of single-family neighborhoods on these islands and the surrounding neighborhoods." *Id.* at 7. The Resolution was prompted by complaints about disruptive house parties on Palm, Hibiscus, and Star Islands, the latest being a large Halloween party at 101 N. Hibiscus Drive (where Plaintiff Librudi resides). *Id.* On November 19, 2024, Vice-Mayor Alex Fernandez placed an item regarding Hibiscus Island house parties during Art Basel on the agenda for the November 20, 2024 City Commission meeting. *Id.* The City thereafter issued the Resolution at the meeting. *Id.*

After the Resolution was passed, each Plaintiff applied for a special events permit, and the City expedited the processing of applications and issued the permits for each party. *Id.* at 7–9. In Plaintiff Hochstein's negotiations, he allegedly committed to an attendance limit of 850 (down from 1,500). *Id.* at 8. Plaintiff Liburdi negotiated that he intends to host two, rather than three parties, each of which shall stop at midnight. *Id.* at 10. Plaintiff Liburdi also agreed that the maximum attendance may be 300 people at each party. *Id.*

On November 26, 2024, Plaintiffs filed a Complaint and Verified Emergency Motion for Temporary Injunction in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-

Dade County, Florida against Defendant the City of Miami. *See generally* ("Compl.") (ECF No. 1-1). On December 1, 2024, the City filed a Notice of Removal. (ECF No. 1). Plaintiffs assert one claim for declaratory relief, on the grounds that the City's Resolution (1) violates Plaintiffs' constitutional due process and First Amendment rights, *see* Compl. ¶ 14, (2) violates Florida state law (Fla. Stat. §§ 252.38; 166.041), *see* Compl. ¶ 12, and (3) violates municipal law (City Code §§ 2–1; 2–14; 2–17 and City Charter "Citizen's Bill of Rights" §§ A–5; A–6; A–8), *see* Compl. ¶¶ 9–10.

**II.    LEGAL STANDARD**

"The standard for a [temporary] injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987). Thus, to secure a temporary injunction, the moving party must show: "(1) a substantial likelihood of success on the merits; (2) a likelihood of suffering irreparable harm without a preliminary injunction; (3) that the threatened injury to the party outweighs any harm that might result to the defendants; and (4) that an injunction is not adverse to the public interest." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990); Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "The plaintiff bears the 'burden of persuasion' on each of these four factors." *Id.* (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).

An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). "Indeed, the grant of a preliminary injunction is 'the exception rather than the rule.'" *Brown v. Sec'y, U.S. Dep't of Health & Hum. Servs.*, 4 F.4th 1220, 1224 (11th Cir. 2021) (citation omitted).

4

**III. DISCUSSION**

In the Motion, Plaintiffs argue that a temporary injunction is appropriate under the U.S. Constitution, Florida law, and the City's municipal laws. *See generally* Mot. In Response to the Motion, the City argues (1) that Plaintiffs' time related claims are moot in light of the special use permits issued to allow the parties to proceed, and (2) Plaintiffs are not entitled to injunctive relief pursuant to the City's home-rule police powers. *See generally* Resp. Plaintiffs in Reply (in light of the "immediate nature of this matter") limited their arguments to (1) that each party is not a "commercial event" and thus not subject to a special use permit, and (2) that Plaintiffs have not accepted the special use permits, and thus the Motion cannot be rendered moot. *See generally* Reply. The Court addresses the Parties' arguments in turn.

**A. Mootness**

Before addressing the merits of the Motion, the Court first addresses the City's argument that the temporary injunction request is moot. The City specifically argues that Plaintiffs' claims regarding the timing of the Resolution and Plaintiffs' inability to obtain the special use permits are moot, given Plaintiffs have been issued special use permits and can now still throw their respective parties thereunder. Resp. at 11. Plaintiffs argue in reply that the special use permits do not address the underlying issues raised in the Complaint and Motion, including the "illegal manner" in which the Resolution was passed, that the Resolution forced Plaintiffs to "relinquish their rights," and "unfairly targets the [ ] Plaintiffs and no other residents." Reply at 3. Plaintiffs further argue that the special use permits and the conditions thereunder would force "Plaintiffs to relinquish all rights to contest the actions of the City." *Id.*

A moot case is nonjusticiable, and Article III courts lack jurisdiction to entertain it. *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1282 (11th Cir. 2004).

Here, although the special use permits issued by the City certainly assuage any of Plaintiffs' claims regarding the timing of which the Resolution was passed, Plaintiffs' claim for declaratory relief appears to be based on the manner the Resolution was passed, and its alleged disparate impact on Plaintiffs, rather than the mere inability to receive a permit. And while the special use permits certainly contribute to the Court's findings below, they do not alone render the Motion, and relief sought thereunder, moot.

### B. Plaintiffs Fail to Demonstrate a Substantial Likelihood of Success on the Merits

Plaintiffs first argue that they are substantially likely to succeed on the merits because (1) the Resolution is void under Florida law, (2) the Resolution is not narrowly tailored, and (3) the City failed to provide notice of the Resolution. *See* Mot. at 3–5. In response, the City argues that passing the Resolution did not violate the First Amendment or due process, nor does it violate state statutes, or municipal law.

As a threshold matter, the government's exercise of its police power to regulate certain land uses is not unconstitutional. *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 125 (1978) ("[I]n instances in which a state tribunal reasonably concluded that "the health, safety, morals, or general welfare" would be promoted by prohibiting particular contemplated uses of land, this Court has upheld land-use regulations that destroyed or adversely affected recognized real property interests."). Due process "takings" claims are generally met where (1) the regulations "compel the property owner to suffer a physical "invasion" of his property," or (2) "regulation denies all economically beneficial or productive use of land." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992).

Here, Plaintiffs fail to demonstrate how the City's exercise of its police power to regulate the use of Plaintiffs' property is an unconstitutional taking. That Plaintiffs must apply for an

expedited permit, yet may still entertain hundreds of guests into the late hours of the night, is hardly denying Plaintiffs "all economically beneficial or productive use of land." *Id.* at 1015.

Plaintiffs further allude, albeit in a cursory manner, that the regulations may impede upon their "vested rights." Plaintiffs cite to *City of Miami Beach v. Clevelander Ocean, L.P.*, 338 So. 3d 16, 22 (Fla. 3d DCA 2022), where the plaintiff hotel had previously been granted conditional use permits, which vested noise related rights. "In limited circumstances, private landowners may acquire vested rights in the use of their land that protect them against the enforcement of subsequent legislation." *Id.* Such rights are designed to shield a property owner from enforcement of a regulation, where the owner has previously received approval for, and has made efforts to maintain a property consistent with such property regulations. *Id.* Here, Plaintiffs do not point to any permit or authority that would allow them to host their desired parties. Indeed, the City and Miami-Dade County have existing noise ordinances (City Code § 46-152; County Code § 21-28), yet this would only refute rather than support any vested noise related right. The Court thus finds that Plaintiffs have failed to demonstrate a likelihood of success on the merits for the City's alleged constitutional violations.[3]

The Court next turns to Plaintiffs' claim that the Resolution is void under Florida law, specifically (1) § 252.38(4)(b), requiring that emergency orders enacted by the City be "narrowly tailored" to serve a compelling public safety purpose, and (2) § 166.041(1)(a) requiring that the City comply with a 10-day notice requirement as mandated for enacting ordinances.

---

[3] As the City notes in its Response, the Complaint alleges that the City has violated Plaintiffs fundamental right to "due process under the First Amendment," Compl. ¶ 14, but due process rights exist under the Fifth Amendment. Nor do Plaintiffs offer any case law to support their theory that throwing their respective parties violates their First Amendment rights.

First, Florida Statute § 252.38(4)(b) grants municipalities the authority to declare a state of local emergency when there is an imminent threat to public peace and to the general welfare. In this case, the City did not declare a state of emergency related to Art Basel, and the planned parties therewith. Thus, Plaintiffs argument under § 252.38(4)(b) is inapplicable.

Second, Florida Statute § 166.041(1)(a) governs the notice requirements for City ordinances. An "ordinance" is defined as "an official legislative action of a governing body, which action is a regulation of a general and permanent nature and enforceable as a local law." Fla. Stat. § 166.041(1)(a). A resolution, on the other hand, is defined as "an expression of a governing body concerning matters of administration, an expression of temporary character, or a provision for the disposition of a particular item of the administrative business of the governing body." § 166.041(1)(b). The Court agrees with the City that the Resolution—only applicable the week of Art Basel—is of "temporary character," and not of a "general and permanent nature" to render it an ordinance. Resolutions do not require a 10-day notice requirement, and the only notice applicable in this instance would be "reasonable notice" for public meetings, which was provided in advance of the City Commission meeting where the Resolution was discussed and issued. *See* § 286.011(1); Resp. at 16. Accordingly, Plaintiffs have failed to demonstrate a likelihood of success on the merits the alleged state law violations.

Finally, the Court addresses whether passing the Resolution violated municipal law. Plaintiffs cite to certain Code provisions which were allegedly violated, with little context or justification. Briefly addressing each provision, Code § 2–1 requires members of the public to be given reasonable opportunity to be heard before the City Commission. As the Court has discussed, there was requisite notice of the City Commission meeting on November 20, 2024, which Plaintiffs

do not appear to dispute, and members of the community were given the opportunity to speak at the meeting. Resp. at 17.

Next, Code § 2–14 states that agenda items for meetings are "permissible." It is unclear what violation Plaintiffs intend to point to here because in either case, the topic of house parties during Art Basel was placed on the agenda ahead of the City Commission meeting. Next, Code § 2–17 requires the City to "provide targeted electronic notices" and "shall use reasonable good faith efforts that ensure that registered neighborhood associations (and individuals who choose to register) have an opportunity to participate in the city processes that shape any matter that impact residents' quality of life." The City argues that this section was not applicable to the Resolution because it does not fit the definition of "matters that impact residents' quality of life," which are specifically a position "adopted by formal resolution of a registered neighborhood association and transmitted to the city through its city manager." Resp. at 18. It does not appear as though the City made any efforts to provide notice to residents of Star and Hibiscus Islands, which the Resolution specifically targets. However, Plaintiffs make no showing as to how the Resolution might be one that impacts "residents' quality of life" and merely leaves the Court speculating. Without more, the Court cannot conclude likely success on the merits with respect to the City's municipal laws.[4]

Accordingly, the Court finds that Plaintiffs have failed to demonstrate a likelihood of success on the merits for its constitutional, state law, and municipal law claims.

---

[4] Plaintiffs make a passing reference in the Complaint to certain provisions of the Citizens' Bill of Rights in the City Charter. *See* Compl. ¶ 14. Given Plaintiffs do not raise such provisions in the Motion, and without any factual support, case law, or indication of what the provisions are, the Court need not address any potential claims.

### C. Irreparable Harm and Public Interest

Given that Plaintiffs have failed to demonstrate a likelihood of success on the merits, the Court need not address the final prongs of the preliminary injunction framework at great length. *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) ("Failure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits."). However, the Court briefly addresses the remaining arguments that (1) Plaintiffs will suffer irreparable harm, and (2) an injunction will serve the public interest weighing against any harm on the City.

Irreparable harm is defined as "harm of a particular or peculiar nature for which compensation, in money damages, cannot make the injured party whole again." Mot. at 7 (quoting *Cohen v. Cohen*, 567 So. 2d 1015, 1016 (Fla. 3d DCA 1990)). As the City points out, any costs in party preparations Plaintiffs claim will be lost may be sought out as money damages in appropriate court proceedings, which Plaintiffs expressly concede in the Complaint by stating: "If the emergency injunction is not granted, they will amend to seek damages." Compl. at 1 n.1. Nor do Plaintiffs adequately demonstrate any "loss of good will from clients or customers," for what they purport will be private parties at single-family residents.

Finally, Plaintiffs argue that the public has an interest in the "uniform enactment and enforcement of ordinances as to preserve their property rights." Mot. at 8. Plaintiffs further claim that "the City will suffer little to no harm should this Court enter an injunction." *Id.* at 9. The Court finds these statements perplexing. The events that led to the City issuing the Resolution were based on large scale parties described as "total chaos," along with extreme bottlenecking of traffic, and excessively loud music "from 3am until after 6am." Resp. at 4, 9, 10. The City's ability to mitigate chaos, along with the strain on the City's resources these parties cause

significantly outweigh Plaintiffs' interests in throwing their lavish parties, particularly given the City is allowing the parties to proceed (with restrictions).

Accordingly, the Court finds that a temporary injunction is not warranted.

IV.   **CONCLUSION**

Accordingly, UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Motion (ECF No. 3) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this  3rd   day of December, 2024.

                                                  K. MICHAEL MOORE
                                                  UNITED STATES DISTRICT JUDGE

c: All counsel of record